**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X   Case No. 21-cv-02294
MOHIUDDIN AHMED,

                        Plaintiff,

                                                **COMPLAINT**

       -against-

TOYOTA MOTOR CREDIT CORPORATION,
TRANSWORLD SYSTEMS INC. and
ALLTRAN FINANCIAL, LP,

                         Defendants.
-------------------------------------------------------------X

           Plaintiff, by and through his attorneys, FAGENSON & PUGLISI, PLLC,

upon knowledge as to himself and his own acts, and as to all other matters upon

information and belief, brings this complaint against above-named defendants and in

support thereof alleges the following:

INTRODUCTION

         1.     This is an action for damages brought by an individual consumer

for defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692, *et seq.* which prohibits debt collectors from engaging in abusive, deceptive and

unfair acts and practices.

         2.     Further, this is an action for damages and injunctive relief brought

by an individual consumer against defendants pursuant to New York General Business

Law ("NYGBL") § 349 and in negligence regarding defendants' deceptive acts and

practices.

JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 and supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367.

4.      This Court has venue pursuant to 28 U.S.C. § 1391(b) in that plaintiff resides in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

PARTIES

5.      Plaintiff is a natural person who resides in this District.

6.      Plaintiff is a consumer within the meaning of 15 U.S.C. § 1692a(3) as he is a natural person who is alleged by defendants to owe a financial obligation.

7.      The financial obligation which defendants sought to collect from plaintiff is a debt within the meaning of 15 U.S.C. § 1692a(5) in that the obligation which defendants sought to collect from plaintiff was allegedly incurred for personal, family or household purposes and concerned an automobile loan allegedly owed to defendant Toyota Motor Credit Corporation.

8.      Plaintiff is a reasonable consumer within the meaning of NYGBL § 349 who acted reasonably under the circumstances alleged herein.

9.     Defendant Toyota Motor Credit Corporation ("TMCC") is a foreign business corporation incorporated under the laws of the State of California.

10.    TMCC also does business as Toyota Financial Services.

11.    Upon information and belief, at all times hereinafter mentioned, TMCC was and is duly authorized to do business and doing business within the State of New York.

12.    Defendant Transworld Systems Inc. ("TSI") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

13.    The principal purpose of TSI's business is the collection of defaulted consumer debts.

14.    TSI uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

15.    TSI regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

16.    Upon information and belief, TSI is foreign business corporation incorporated under the laws of the State of California.

17.    Defendant Alltran Financial, LP ("Alltran") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

18.    The principal purpose of Alltran's business is the collection of defaulted consumer debts.

19.     Alltran uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

20.     Alltran regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

21.     Upon information and belief, Alltran is foreign limited partnership formed under the laws of the State of Texas.

FACTUAL ALLEGATIONS

22.     Plaintiff re-alleges paragraphs 1-21 as if fully re-stated herein.

23.     In or around the year 2015, plaintiff leased a Toyota Camry automobile.

24.     The lease was for three years.

25.     In connection with the lease payments, TMCC became plaintiff's creditor on a TMCC account ending 6150001 ("Account").

26.     Plaintiff duly made timely payments on the lease.

27.     At the end of the lease term in or around June 2018, plaintiff had dutifully paid the lease payments and owed a zero balance to TMCC.

28.     At no time following plaintiff's return of the vehicle at the end of the lease did TMCC or any other Toyota entity inform plaintiff that he owed any monies in connection with the lease.

29.     Then, in or around November 2018, plaintiff received a collection letter dated November 16, 2018 from Alltran.

30.     Alltran sent a collection letter to plaintiff dated November 16, 2018.

31.     A copy of Alltran's collection letter is attached hereto as **Exhibit 1**.

32.     By the letter Alltran was attempting to collect a debt for $1,659.95 from plaintiff for the Account.

33.     By the letter, Alltran was attempting to collect the alleged debt on behalf of TMCC.

34.     TMCC referred the alleged debt to Alltran to collect from plaintiff.

35.     TMCC hired Alltran to collect the alleged debt from plaintiff.

36.     In the matter of the collection of the alleged debt from plaintiff, Alltran was TMCC's agent.

37.     In the matter of the collection of the alleged debt from plaintiff, TMCC was Alltran's client.

38.     In the matter of the collection of the alleged debt from plaintiff, TMCC was Alltran's principal.

39.     TMCC exercised control and/or had the ability to exercise control over Alltran in Alltran's collection of the alleged debt from plaintiff.

40.     Upon receipt of Alltran's collection letter, plaintiff became shocked, upset, perplexed and confused.

41.     Plaintiff wondered how it was possible that he owed any money on the Account, let alone almost $2,000.

42.     Plaintiff did not believe he owed TMCC any money on the Account and believed that he had timely paid all monies due and owing on the Account.

43.     Plaintiff wondered from where he would obtain $1,659.95 to pay TMCC or Alltran, since he had no money with which to pay.

44.     Following receipt of Alltran's collection letter, plaintiff determined that he needed the advice and representation of legal counsel and sought out same by consulting with attorneys at Fagenson & Puglisi, PLLC.

45.     On or about December 6, 2018 plaintiff obtained his credit report from TransUnion consumer reporting agency.

46.     On said credit report, TMCC reported the Account as carrying a zero balance as of June 2018, that the Account had never been paid late, that the Account was "Current; Paid or Paying as Agreed" and that the Account was "CLOSED" as of TMCC's last update of the Account on June 30, 2018.

47.     A copy of the TMCC tradeline on plaintiff's said credit report is attached hereto as **Exhibit 2**.

48.     Therefore, by representation and dispute letter dated December 7, 2018, plaintiff's attorneys wrote to Alltran.

49.     In said letter to Alltran, plaintiff's attorneys informed Alltran that Fagenson & Puglisi represented plaintiff.

50.     In said letter to Alltran, plaintiff's attorneys also informed Alltran that plaintiff disputed the debt Alltran was attempting to collect from plaintiff.

51.     In said letter to Alltran, plaintiff's attorneys specifically informed Alltran that plaintiff owed no money to TMCC for any charges, excessive wear and tear or mileage, as intimated by Alltran in its collection letter.

52.     In said letter to Alltran, plaintiff's attorneys further requested that Alltran provide to them, *inter alia*, all documentation supporting Alltran's claim that plaintiff owed TMCC $1,659.95.

53.     A copy of Fagenson & Puglisi's letter dated December 7, 2018 to Alltran and a copy of the postmarked envelope in which said letter was mailed are attached hereto as **Exhibit 3**.

54.     Alltran received Fagenson & Puglisi's said letter.

55.     On information and belief, Alltran informed TMCC of Alltran's receipt of Fagenson & Puglisi's said letter and the contents thereof.

56.     Alltran should have informed TMCC of Alltran's receipt of Fagenson & Puglisi's said letter and the contents thereof.

57.     Fagenson & Puglisi never received a response to its said letter from Alltran.

58.     Alltran never sent to Fagenson & Puglisi a response to Fagenson & Puglisi's said letter.

59.     Fagenson & Puglisi never received a response to its said letter from TMCC.

60.     TMCC never sent to Fagenson & Puglisi a response to Fagenson & Puglisi's said letter.

61.     Thereafter, by collection letter dated July 16, 2020, TSI wrote to plaintiff.

62.     TSI sent a collection letter to plaintiff dated July 16, 2020.

63.     A copy of the TSI collection letter is attached hereto as **Exhibit 4**.

64.     TSI sent the collection letter directly to plaintiff at his home.

65.     By the letter, TSI was attempting to collect two TMCC accounts.

66.     TSI was attempting to collect the two TMCC accounts on behalf of TMCC.

67.     TMCC placed the accounts with TSI to collect from plaintiff.

68.     TMCC hired TSI to collect the accounts from plaintiff.

69.     In the matter of the collection of the accounts from plaintiff, TSI was TMCC's agent.

70. In the matter of the collection of the accounts from plaintiff, TMCC was TSI's client.

71. In the matter of the collection of the accounts from plaintiff, TMCC was TSI's principal.

72. TMCC exercised control and/or had the ability to exercise control over TSI in TSI's collection of the accounts from plaintiff.

73. One of the two accounts which TSI was attempting to collect from plaintiff was the aforesaid TMCC Account on which TMCC and Alltran were falsely claiming plaintiff owed TMCC $1,659.95.

74. Alltran received Fagenson & Puglisi's aforesaid representation and dispute letter dated December 7, 2018.

75. Alltran knew that Fagenson & Puglisi represented plaintiff in the matter of the collection of the alleged TMCC debt on the Account.

76. Alltran knew that plaintiff disputed owing any monies to TMCC for the Account.

77. Alltran knew that Fagenson & Puglisi represented plaintiff in the matter of the collection of the alleged TMCC debt and that plaintiff disputed owing any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

78.     Alltran ought to have informed TMCC that Fagenson & Puglisi so represented plaintiff before TSI sent its collection letter directly to plaintiff at his home.

79.     Alltran ought to have informed TMCC that plaintiff disputed owing any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

80.     Alltran informed TMCC that Fagenson & Puglisi represented plaintiff in the matter of the collection of the alleged debt and that plaintiff disputed owing any monies to TMCC for the Account.

81.     Alltran informed TMCC that Fagenson & Puglisi represented plaintiff in the matter of the collection of the alleged debt and that plaintiff disputed owing any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

82.     Alltran updated its account records with plaintiff's attorneys' information before Alltran returned plaintiff's account to TMCC.

83.     Alltran updated its account records with plaintiff's dispute that he owed any monies to TMCC for the Account before Alltran returned plaintiff's account to TMCC.

84.     TMCC received plaintiff's account records from Alltran when Alltran returned plaintiff's account to TMCC.

85. The account records TMCC received from Alltran upon Alltran's return of plaintiff's account to TMCC contained plaintiff's attorneys' information.

86. The account records TMCC received from Alltran upon Alltran's return of plaintiff's account to TMCC contained a notation of plaintiff's dispute that he owed any monies to TMCC for the Account.

87. TMCC knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt for the Account.

88. TMCC knew that plaintiff disputed owing any monies to TMCC for the Account and that it was plaintiff's position that he owed no monies to TMCC for the Account.

89. TMCC knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account and that plaintiff disputed owing any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

90. TMCC in turn informed TSI that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account.

91. TMCC in turn informed TSI that plaintiff disputed owing any monies to TMCC for the Account and that it was plaintiff's position that he owed no monies to TMCC for the Account.

92. TMCC informed TSI that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account and that plaintiff disputed owing any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

93. TSI knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account.

94. TSI knew that plaintiff disputed owing any monies to TMCC for the Account and that it was plaintiff's position that he owed no monies to TMCC for the Account.

95. TSI knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account and that plaintiff did not owe any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

96. TSI should have known that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account and that plaintiff did not owe any monies to TMCC for the Account before TSI sent its collection letter directly to plaintiff at his home.

97. In any event, TSI had an affirmative duty to inquire of TMCC whether plaintiff was represented by counsel before TSI communicated directly with plaintiff.

98.   TSI sent its collection letter directly to plaintiff at his home notwithstanding that TSI knew that plaintiff was represented by an attorney in the matter of the collection of the alleged debt.

99.   TSI sent its collection letter to plaintiff notwithstanding that TSI knew that plaintiff did not owe the alleged debt for $1,659.95 to TMCC.

100.   TSI communicated directly with plaintiff in the sending of its collection letter directly to plaintiff at his home notwithstanding that TSI knew that plaintiff was represented by an attorney in the matter of the collection of the alleged debt.

101.   In the alternative, Alltran failed to inform TMCC of plaintiff's legal representation before TSI sent its collection letter directly to plaintiff at his home.

102.   As a further alternative, Alltran informed TMCC of plaintiff's legal representation before TSI sent its collection letter directly to plaintiff at his home.

103.   However, TMCC failed to inform TSI of plaintiff's legal representation before TSI sent its collection letter directly to plaintiff at his home.

104.   Further, TMCC knew that plaintiff owed it no monies for the Account.

13

105.     Yet, TMCC hired Alltran to collect $1,659.95 from plaintiff in connection with the Account.

106.     Yet, TMCC hired TSI to collect $1,659.95 from plaintiff in connection with the Account.

107.     Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

108.     Plaintiff did and could not understand why TMCC and its debt collectors were still hounding him to collect a debt that he did not owe.

109.     Further, plaintiff did not and could not understand why TMCC and its debt collectors would continue to try to collect from him the non-existent debt without even providing to him any proof as to the validity of the debt, as he requested.

110.     In addition, plaintiff did not and could not understand why TMCC and its agent debt collector TSI would continue to communicate with him directly when they knew he was represented by legal counsel.

## ALLEGATIONS AGAINST TRANSWORLD SYSTEMS INC.

AS AND FOR A FIRST CAUSE OF ACTION

Improper direct communication with Plaintiff

15 U.S.C. §§ 1692c(a)(2) and 1692e

111.    Plaintiff re-alleges paragraphs 1-110 as if fully re-stated herein.

112.    Alltran informed TMCC that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before TSI sent its collection letter directly to plaintiff at his home.

113.    TMCC knew that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before TSI sent its collection letter directly to plaintiff at his home.

114.    TMCC informed TSI that plaintiff was represented by Fagenson & Puglisi before TSI sent its collection letter directly to plaintiff at his home.

115.    TMCC informed TSI that plaintiff was represented by legal counsel before TSI sent its collection letter directly to plaintiff at his home.

116.    TSI knew of plaintiff's legal representation and should not be contacted directly before TSI sent its collection letter directly to plaintiff at his home.

117.    TSI knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt and should not be contacted directly before TSI sent its collection letter directly to plaintiff at his home.

118.    In any event, TSI had an affirmative duty to inquire of TMCC whether plaintiff was represented by counsel in the matter of the debt before TSI communicated directly with plaintiff.

119.    TSI did not inquire of TMCC whether plaintiff was represented by counsel before TSI sent its collection letter directly to plaintiff at his home.

120.    TSI sent its collection letter directly to plaintiff at his home notwithstanding its knowledge that plaintiff was represented by legal counsel, thereby violating the FDCPA, § 1692c(a)(2).

121.    TSI sent its collection letter directly to plaintiff at his home as a result of its violation of its affirmative duty to inquire of TMCC, before communicating with plaintiff, whether plaintiff was represented by legal counsel, thereby violating the FDCPA, § 1692c(a)(2).

122.    Further, TSI is in violation of the FDCPA, § 1692e in that TSI's conduct in contacting plaintiff directly after knowledge of attorney representation, constitutes a deceptive and misleading means used in an attempt to collect the debt and was an effort to mislead plaintiff into communicating with TSI directly in disregard of the representation of his legal counsel.

123.    TSI is further in violation of the FDCPA, § 1692e in that  TSI's conduct in contacting plaintiff directly was a result of its violation of its affirmative duty to inquire of TMCC, before communicating with plaintiff, whether plaintiff  was represented  by  legal counsel, and constitutes  a  deceptive  and  misleading  means used in an attempt to collect the debt as an effort to mislead plaintiff into  communicating with TSI directly in disregard of the representation of his legal counsel.

124.    Communications from debt collectors, such as those sent by defendants, are to be evaluated  by  the  objective  standard  of  the  hypothetical  "least sophisticated consumer".

### AS AND FOR A SECOND CAUSE OF ACTION

Improper collection of debt not owed

15 U.S.C. §§ 1692e and 1692e(2)(A)

125.    Plaintiff re-alleges paragraphs 1-124 as if fully re-stated herein.

126.    As evidenced by Exhibit 2 hereto–TMCC's Account tradeline on plaintiff's credit report dated December 6, 2018–plaintiff did not owe any monies to TMCC for the Account.

127.    TMCC knew that plaintiff did not owe any monies to TMCC for the Account.

128.    TMCC ought to have informed TSI that plaintiff did not owe any monies to TMCC for the Account.

129.    Independently of TMCC, through the exercise of due diligence, TSI knew that plaintiff did not owe any monies to TMCC for the Account.

130.    Independently of TMCC, through the exercise of due diligence, TSI ought to have known that plaintiff did not owe any monies to TMCC for the Account.

131.    Nevertheless, TSI sent its collection letter to plaintiff on behalf of TMCC in an attempt to collect $1,659.95 for the Account.

132.    TSI's sending of its collection letter to plaintiff to collect $1,659.95 which plaintiff did not owe to TMCC was false, deceptive and misleading, and was the false representation of the character, amount and legal status of a debt, in violation of the FDCPA, §§ 1692e and 1692e(2)(A).

## AS AND FOR A THIRD CAUSE OF ACTION

## NYGBL § 349

133.    Plaintiff re-alleges paragraphs 1-132 as if fully re-stated herein.

134.    TSI owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

135.    TSI breached its duty to collect plaintiff's alleged debt with reasonable care.

136.    TMCC informed TSI that plaintiff was represented by Fagenson & Puglisi before TSI sent its collection letter directly to plaintiff at his home.

137.   TMCC informed TSI that plaintiff was represented by legal counsel before TSI sent its collection letter directly to plaintiff at his home.

138.   TSI knew of plaintiff's legal representation before TSI sent its collection letter directly to plaintiff at his home.

139.   TSI knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before TSI sent its collection letter directly to plaintiff at his home.

140.   In the exercise of reasonable care TSI ought to have ensured that for any account on which an attorney represented the consumer any communication by TSI was made with the attorney, and not with the consumer directly.

141.   The fact that TSI contacted plaintiff directly regarding the same debt for which TSI had been informed that he had legal representation indicates a failure on the part of TSI to comply with or to perform its duty to effect collection of the debt with reasonable care.

142.   On information and belief, at all times material hereto, TMCC placed dozens of consumer accounts of New York residents with TSI for collection monthly.

143.   TSI's act of communicating with plaintiff directly despite his legal representation is a deceptive act and practice.

144.   Said deceptive act and practice was committed by TSI in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

145.   TSI's letter to plaintiff is a form collection letter.

146.   TSI's letter to plaintiff is derived from a letter template.

147.   TSI's deceptive act and practice was consumer-oriented, in that TSI's act of communicating directly with a legally–represented consumer despite knowledge that he was represented by counsel was not an act limited to plaintiff's account, but extended to the accounts of other consumers which TMCC referred to TSI for collection and on which there was legal representation.

148.   TSI maintained no agreement or procedure with TMCC to ensure that TMCC did not refer to TSI accounts of legally–represented consumers for collection or, in the alternative, to ensure that TSI did not communicate directly with legally–represented consumers.

149.   TSI's said conduct of communicating directly with legally–represented consumers has a broader impact on consumers at large whose accounts are placed by TMCC with TSI for collection and who are represented by counsel in the matter of the collection of their TMCC debts.

150.   TSI owes a duty to plaintiff and consumers at large to honor their right to legal representation and TSI's failure to honor plaintiff's said right resulted in TSI sending its collection letter directly to plaintiff at his home thereby improperly encouraging plaintiff to contact TSI directly about a debt for which he had the representation of legal counsel.

151.   Therefore, TSI's failure to honor plaintiff's legal representation by its sending of its collection letter directly to plaintiff at his home was deceptive and misleading in a material way.

152.   Further, TSI's sending of its collection letter to plaintiff in an attempt to collect $1,659.95 constituted a deceptive act and practice and a demand for plaintiff to pay a debt which he did not owe.

153.   Plaintiff is a reasonable consumer within the meaning of the NYGBL § 349(a) and acted reasonably under the circumstances of this case.

154.   Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

155.   Plaintiff did not and could not understand why TMCC and its debt collectors were still hounding him to collect a debt that he did not owe.

156.   Further, plaintiff did not and could not understand why TMCC and its debt collectors would continue to try to collect from him the non-existent debt without even providing to him any proof as to the validity of the debt, which he requested.

157.   In addition, plaintiff did not and could not understand why TMCC and its agent debt collector TSI would continue to communicate with him directly when they knew that he was represented by legal counsel.

158.   TSI violated NYGBL § 349(a) by the sending of its collection letter directly to plaintiff at his home and by the sending of its collection letter to collect a debt which plaintiff did not owe and is liable to plaintiff under NYGBL § 349(h).

159.   As a result of the above violations, plaintiff is entitled to an injunction against TSI and TSI is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR A FOURTH CAUSE OF ACTION

Negligence

160.   Plaintiff re-alleges paragraphs 1-159 as if fully re-stated herein.

161.   Under NYGBL § 349(a), TSI owed a recognized duty to plaintiff to effect collect of his alleged debt with reasonable care.

162.   Under NYGBL § 349(a), TSI had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

163.   In addition, TSI had a duty at common law to collect plaintiff's alleged debt with reasonable care.

164.   TSI breached each duty to plaintiff.

165.   TSI breached each duty to plaintiff by disregarding his right to be represented by counsel, by sending its collection letter directly to plaintiff at his home in defendants' campaign to collect the invalid debt from plaintiff.

166.    Further, TSI breached each duty to plaintiff by sending the collection letter concerning the Account at all, since plaintiff owed no debt to TMCC for the Account.

167.    TSI communicated with plaintiff directly and sent the collection letter concerning the non-existent debt in breach of its duty to effect collection of the alleged debt with reasonable care and not to use deceptive acts and practices in the conduct of its business.

168.    As a direct consequence of TSI's said breach of duty to plaintiff, plaintiff suffered foreseeable damage.

169.    As a direct consequence of TSI's said breach of duty to plaintiff, plaintiff suffered damage in that plaintiff became even more perplexed, confused, shocked and upset, and felt a sense that defendants were harassing him in their collection campaign to communicate with him directly despite defendants' knowledge that he did not owe the alleged debt and in any event was represented by legal counsel in the matter of the collection of alleged debt, and TSI's communication with him directly caused plaintiff to fear that Fagenson & Puglisi no longer represented him in the matter of the collection of the non-existent debt and caused plaintiff to seek further legal advice and representation.

23

WHEREFORE, plaintiff respectfully prays that judgment be entered against TSI as follows:

(a)    awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

(b)    awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

(c)    awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

(d)    enjoining TSI from continuing to communicate with plaintiff concerning the non-existent debt, pursuant to NYGBL § 349;

(e)    enjoining TSI from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

(f)    awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)    in the alternative to (f), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(h)    awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h);

(i)    awarding damages to plaintiff for TSI's negligence; and

(j)    for such other and further relief as may be just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

**ALLEGATIONS AGAINST TOYOTA MOTOR CREDIT CORPORATION**

AS AND FOR A FIFTH CAUSE OF ACTION

NYGBL § 349

Improper collection of debt not owed

170.    Plaintiff re-alleges paragraphs 1-169 as if fully re-stated herein.

171.    Under NYGBL, TMCC owed a duty to plaintiff to exercise reasonable care in determining whether plaintiff owed it a debt.

172.    Under NYGBL, TMCC owed a duty of reasonable care to plaintiff not to demand of plaintiff monies that plaintiff did not owe.

173.    TMCC breached each of the said duties to plaintiff.

174.    As evidenced by Exhibit 2 hereto–TMCC's own Account tradeline on plaintiff's credit report dated December 6, 2018–plaintiff did not owe any monies to TMCC for the Account.

175.    TMCC knew that plaintiff did not owe any monies to TMCC for the Account.

176.    TMCC ought never to have referred the Account to Alltran for collection.

177.    TMCC ought never to have placed the Account with TSI for collection.

178.    TMCC ought never to have hired any debt collector to collect the Account from plaintiff in the first place, since plaintiff owed no debt to TMCC on the Account.

179.    In addition, by Exhibit 3 plaintiff, through his attorneys, informed TMCC's agent Alltran that he did not owe any monies to TMCC and specifically that he did not owe any monies for charges, excessive wear and tear or mileage, as intimated by Alltran in its collection letter, Exhibit 1.

180.    Further, by Exhibit 3, plaintiff requested documentation supporting Alltran's claim that plaintiff owed TMCC monies on the Account.

181.    TMCC received Exhibit 3 from Alltran.

182.    TMCC received from Alltran Fagenson & Puglisi's letter dated December 7, 2018.

183.    TMCC was informed by Alltran that plaintiff disputed owing any monies to TMCC on the Account.

184.    TMCC was informed by Alltran that plaintiff disputed owing any monies to TMCC on the Account before TMCC placed the alleged debt with its agent TSI for collection.

185.    TMCC was informed by Alltran that plaintiff disputed owing any monies to TMCC on the Account before TMCC's agent TSI sent its collection letter directly to plaintiff at his home.

186.     Therefore, not only did TMCC fail to exercise due diligence in determining whether plaintiff owed it a debt in the first place, TMCC proceeded to hire a second debt collector, TSI, to collect the alleged debt from plaintiff even after TMCC was informed by Alltran that plaintiff's position is that he did not owe any monies to TMCC and specifically that he did not owe any monies for charges, excessive wear and tear or mileage.

187.     As mentioned above, by Exhibit 3, Fagenson & Puglisi requested documents substantiating TMCC's claim that plaintiff owed TMCC monies for the alleged debt.

188.     TMCC did not provide any documentation to Fagenson & Puglisi substantiating its claim that plaintiff owed TMCC monies for the alleged debt.

189.     Instead, TMCC placed the alleged debt with TSI for collection from plaintiff, in continuation of the harassment campaign which TMCC had launched against plaintiff.

190.     On information and belief, at all times material to this complaint, TMCC acquired and collected from New York consumers thousands of automobile loans each month.

191.     On information and belief, at all times material to this complaint, TMCC placed with Alltran dozens of consumer automobile loans of New York residents each month for the purpose of collection.

192.    On information and belief, at all times material to this complaint, TMCC placed with TSI dozens of consumer automobile loans of New York residents each month for the purpose of collection.

193.    TMCC's act of failing, refusing and neglecting to recognize that plaintiff owed it no monies on the Account is a deceptive act and practice.

194.    TMCC's act of referring the non-existent debt to Alltran for collection from plaintiff is a deceptive act and practice.

195.    TMCC's act of placing the non-existent debt with TSI for collection from plaintiff is a deceptive act and practice.

196.    Such deceptive act and practice was committed by TMCC in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

197.    TMCC's deceptive act and practice was consumer–oriented, in that TMCC's act of failing, refusing and neglecting to recognize that plaintiff owed it no monies on the Account and TMCC's act of hiring debt collectors to collect the non-existent debt from plaintiff was not an act limited to plaintiff's account, but extended to the accounts of other consumers who TMCC falsely determined owed monies to it and whose accounts TMCC hired debt collectors to collect.

198.    TMCC's said deceptive conduct has a broader impact on consumers at large, and is not directed solely at plaintiff in particular.

199.   TMCC's failure, refusal and neglect to recognize that plaintiff owed it no monies on the Account and then launching a campaign to collect the non-existent debt from plaintiff by hiring Alltran and then TSI was deceptive and misleading in a material way, in that such conduct by the financing arm of a global, multinational automobile manufacturer would tend to cause a reasonable consumer to second-guess whether she owes the monies demanded by TMCC and cause said consumer to pay monies she does not owe.

200.   Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

201.   Upon receipt of Alltran's collection letter, plaintiff became shocked, upset, perplexed and confused.

202.   Plaintiff was obliged to seek legal advice and representation after receipt of Alltran's letter.

203.   Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

204.   Plaintiff did not and could not understand why TMCC and its debt collectors were still hounding him to collect a debt that he did not owe, even after Fagenson & Puglisi informed them that plaintiff did not owe the alleged debt.

205.    Further, plaintiff did not and could not understand why TMCC and its debt collectors would continue to try to collect from him the non-existent debt without even providing to him any proof as to the validity of the debt.

206.    As a result of the above violations, TMCC violated NYGBL § 349, plaintiff is entitled to injunctive relief against TMCC and TMCC is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR A SIXTH CAUSE OF ACTION

NYGBL § 349

Improper direct communication with Plaintiff

207.    Plaintiff re-alleges paragraphs 1-206 as if fully re-stated herein.

208.    Under NYGBL, TMCC owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

209.    TMCC breached its duty to collect plaintiff's alleged debt with reasonable care.

210.    TMCC received Exhibit 3.

211.    TMCC received Fagenson & Puglisi's letter dated December 7, 2018.

212.    TMCC was informed by Alltran that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account.

213.   TMCC knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account before TSI sent its collection letter directly to plaintiff at his home.

214.   TMCC was informed by Alltran that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the alleged debt on the Account before TSI sent its collection letter directly to plaintiff at his home.

215.   Nevertheless, TMCC did not inform TSI that plaintiff was represented by Fagenson & Puglisi.

216.   TMCC did not inform TSI that plaintiff was represented by Fagenson & Puglisi before TSI sent its collection letter directly to plaintiff at his home.

217.   TMCC caused TSI to send its collection letter directly to plaintiff at his home.

218.   In the exercise of reasonable care, TMCC ought to have ensured that for any debt on which an attorney represented the consumer any communication by TMCC or by any of its agents was made with the attorney and not with the consumer directly.

219.   The fact that TMCC's agent, TSI, contacted plaintiff directly regarding the same debt for which TMCC had been informed that plaintiff had legal representation indicates a failure on the part of TMCC to comply with or to perform its duty to effect collection of the alleged debt with reasonable care.

220.    On information and belief, at all times material to this complaint, TMCC placed with TSI dozens of consumer accounts of New York residents each month for the purpose of collection.

221.    On information and belief, at all times material to this complaint, TMCC placed with TSI dozens of consumer automobile loans of New York residents each month for the purpose of collection.

222.    TMCC's act of failing to inform TSI that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice.

223.    Said deceptive act and practice was committed by TMCC in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

224.    TMCC's deceptive act and practice was consumer–oriented, in that TMCC's act of failing to inform TSI that plaintiff was represented by Fagenson & Puglisi despite knowledge that he was so represented was not an act limited to plaintiff's account, but extended to the accounts of other consumers which TSI obtained from TMCC for collection and on which there was legal representation.

225.    TMCC maintained no procedure to ensure that it did not communicate, through its agent TSI, with consumers it knew to be represented by counsel.

226.   TMCC's said conduct of failing to inform its agents that consumers are represented by legal counsel despite so knowing has a broader impact on consumers at large whose accounts are obtained by TSI from TMCC for collection and who are represented by counsel in the matter of the collection of their debts.

227.   TMCC owes a duty to plaintiff and consumers at large to honor their right to legal representation and TMCC's failure to honor plaintiff's said right resulted in TSI, TMCC's agent, sending its collection letter directly to plaintiff at his home, thereby improperly encouraging plaintiff to communicate with TSI directly about a debt for which TMCC knew he had the representation of legal counsel.

228.   Therefore, TMCC's failure to honor plaintiff's legal representation and its agent TSI's sending of its collection letter directly to plaintiff at his home were deceptive and misleading in a material way.

229.   Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

230.   Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

231.   Plaintiff did not and could not understand why TMCC and its agent debt collector TSI would continue to communicate with him directly when they knew that he was represented by legal counsel.

232.    Even if TMCC had informed TSI of plaintiff's legal representation in a timely manner, TMCC is nevertheless vicariously liable to plaintiff for the improper conduct of its agent TSI in nevertheless communicating directly with plaintiff.

233.    As a result of the above violations, TMCC violated NYGBL § 349, plaintiff is entitled to injunctive relief against TMCC and TMCC is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR A SEVENTH CAUSE OF ACTION

Negligence

234.    Plaintiff re-alleges paragraphs 1-233 as if fully re-stated herein.

235.    Under the NYGBL § 349(a), TMCC owed a recognized duty to plaintiff to effect collection of his alleged debt with reasonable care.

236.    Under the NYGBL § 349(a), TMCC had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

237.    In addition, TMCC had a duty at common law to collect plaintiff's alleged debt with reasonable care.

238.    TMCC breached each duty to plaintiff.

239.    TMCC breached each duty to plaintiff by failing to inform TSI of plaintiff's legal representation, thereby disregarding plaintiff's right to legal representation and causing TSI to send its collection letter directly to plaintiff at his home in defendants' campaign to collect the invalid debt from plaintiff.

240.   Further, TMCC breached each duty to plaintiff by causing its agents Alltran and TSI to send their collection letters concerning the Account at all, since plaintiff owed no debt to TMCC for the Account.

241.   TMCC improperly communicated with plaintiff directly through its agent TSI and caused Alltran and TSI to send their collection letters concerning the non-existent debt, in breach of TMCC's duty to effect collection of the debt with reasonable care and not to use deceptive acts and practices in the conduct of its business.

242.   As a direct consequence of TMCC's said breach of duty to plaintiff, plaintiff suffered foreseeable damage.

243.   As a direct consequence of TMCC's said breach of duty to plaintiff, plaintiff suffered damage in that plaintiff became even more perplexed, confused, shocked and upset, and felt a sense that defendants were harassing him in their collection campaign to communicate with him directly despite defendants' knowledge that he did not owe the debt, and in any event was represented by legal counsel in the matter of the collection of alleged debt, and TSI's communication with him directly at the behest of TMCC caused plaintiff to fear that Fagenson & Puglisi no longer represented him in the matter of the collection of the non-existent debt and caused plaintiff to seek further legal advice and representation.

244.   TMCC is directly liable for its own conduct in falsely communicating to others such as Alltran and TSI that plaintiff owed a debt that he did not owe and in placing a non-existent debt with collection agencies for the purpose of collecting same from plaintiff.

245.   Further, TMCC is directly liable for its own conduct in failing to inform TSI that plaintiff was represented by Fagenson & Puglisi before TSI sent its collection letter directly to plaintiff at his home.

246.   Even if TMCC had informed TSI of plaintiff's legal representation in a timely manner, TMCC is nevertheless vicariously liable to plaintiff for the improper conduct of its agent TSI in nevertheless communicating directly with plaintiff.

WHEREFORE, plaintiff respectfully prays that judgment be entered against TMCC as follows:

(a)   awarding damages to plaintiff for TMCC's negligence;

(b)   enjoining TMCC from continuing to communicate with plaintiff directly through its agents, pursuant to NYGBL § 349;

(c)   enjoining TMCC from continuing its collection campaign to collect from plaintiff a debt that he does not owe, pursuant to NYGBL § 349;

(d)   enjoining TMCC from committing further deceptive and misleading acts and practices against plaintiff, pursuant to NYGBL § 349;

(e)     awarding actual damages pursuant to NYGBL § 349 in an amount to

be determined at time of trial;

(f)     in the alternative to (e), awarding statutory damages pursuant to

NYGBL § 349 in an amount to be determined at time of trial;

(g)     awarding reasonable attorneys' fees, costs and disbursements

pursuant to NYGBL § 349(h); and

(h)     for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

## **ALLEGATIONS AGAINST ALLTRAN FINANCIAL, LP**

## AS AND FOR AN EIGHTH CAUSE OF ACTION

## NYGBL § 349

## Improper collection of debt not owed

247.    Plaintiff re-alleges paragraphs 1-246 as if fully re-stated herein.

248.    Alltran owed a duty to plaintiff to effect its collection of plaintiff's

alleged debt with reasonable care.

249.    As and for an alternative cause of action, Alltran breached its duty to

collect plaintiff's alleged debt with  reasonable care.

250.    Alltran received Exhibit 3.

251.    Alltran received Fagenson & Puglisi's letter dated December 7, 2018.

252.    Alltran did not inform TMCC that Alltran had received Exhibit 3.

253.    Alltran did not inform TMCC that Alltran had received Fagenson & Puglisi's letter dated December 7, 2018.

254.    Alltran did not provide Exhibit 3 to TMCC.

255.    Alltran did not provide to TMCC Fagenson & Puglisi's letter dated December 7, 2018.

256.    Alltran did not inform TMCC that it was plaintiff's position that he owed no monies to TMCC on the account.

257.    Alltran did not inform TMCC that it was plaintiff's position that he owed no monies to TMCC on the account, whether for charges, excessive wear and tear or mileage.

258.    Alltran did not inform TMCC that plaintiff was requesting, *inter alia*, documentation supporting the claim that plaintiff owed $1,659.95 to TMCC for the Account.

259.    As evidenced by Exhibit 2 hereto–TMCC's own Account tradeline on plaintiff's credit report dated December 6, 2018–plaintiff did not owe any monies to TMCC for the Account.

260.    TMCC knew that plaintiff did not owe any monies to TMCC for the Account.

261.    TMCC ought never to have referred the Account to Alltran for collection.

262.    TMCC ought to have informed Alltran that plaintiff did not owe any monies to TMCC for the Account.

263.    Independently of TMCC, through the exercise of due diligence, Alltran knew that plaintiff did not owe any monies to TMCC for the Account.

264.    Independently of TMCC, through the exercise of due diligence, Alltran ought to have known that plaintiff did not owe any monies to TMCC for the Account.

265.    Nevertheless, Alltran sent its collection letter on behalf of TMCC to plaintiff in an attempt to collect $1,659.95 for the Account.

266.    Alltran's collection letter to plaintiff is a form collection letter.

267.    Alltran's collection letter to plaintiff is derived from a letter template.

268.    On information and belief, at all times material to this complaint, TMCC referred dozens of consumer accounts of New York residents to Alltran for collection each month.

269.    Alltran's sending of its collection letter to plaintiff to collect $1,659.95 which plaintiff did not owe to TMCC was a deceptive act and practice.

270.    Said deceptive act and practice was committed by Alltran in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

271.     Alltran's deceptive act and practice was consumer–oriented, in that Alltran's act of failing, refusing and neglecting to recognize that plaintiff owed TMCC no monies on the Account was not an act limited to plaintiff's account, but extended to the accounts of other consumers who TMCC falsely determined owed monies to it and whose accounts TMCC referred to Alltran for collection.

272.     Alltran's said deceptive conduct has a broader impact on consumers at large, and is not directed solely at plaintiff in particular.

273.     Alltran's failure, refusal and neglect to recognize that plaintiff owed TMCC no monies on the Account and then launching a campaign to collect the non-existent debt from plaintiff was deceptive and misleading in a material way, in that such conduct would tend to cause a reasonable consumer to second-guess whether she does owe the monies demanded by Alltran and cause said consumer to pay monies she does not owe.

274.     Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

275.     Upon receipt of Alltran's collection letter, plaintiff became shocked, upset, perplexed and confused.

276.     Plaintiff was obliged to seek legal advice and representation after receipt of Alltran's letter.

277.    Due to its failure, refusal and neglect to inform TMCC of its receipt of Exhibit 3 or the contents of Exhibit 3, Alltran assisted in causing TMCC to place the non-existent debt with TSI for further collection and harassment of plaintiff.

278.    Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

279.    Plaintiff did not and could not understand why TMCC and its debt collectors were still hounding him to collect a debt that he did not owe, even after Fagenson & Puglisi informed them that plaintiff did not owe the alleged debt.

280.    Further, plaintiff did not and could not understand why TMCC and its debt collectors would continue to try to collect from him the non-existent debt without even providing to him any proof as to the validity of the debt.

281.    As a result of the above violations, Alltran violated NYGBL § 349 and plaintiff is entitled to injunctive relief against Alltran and Alltran is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR AN NINTH CAUSE OF ACTION

NYGBL § 349

<u>Failure to inform TMCC that Plaintiff was represented by legal counsel</u>

282.   Plaintiff re-alleges paragraphs 1-281 as if fully re-stated herein.

283.   Alltran owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

284.   As and for an alternative cause of action, Alltran breached its duty to collect plaintiff's alleged debt with reasonable care.

285.   Alltran received Exhibit 3.

286.   Alltran received Fagenson & Puglisi's letter dated December 7, 2018.

287.   Alltran did not inform TMCC that Alltran had received Exhibit 3.

288.   Alltran did not inform TMCC that Alltran had received Fagenson & Puglisi's letter dated December 7, 2018.

289.   Alltran did not provide Exhibit 3 to TMCC.

290.   Alltran did not provide to TMCC Fagenson & Puglisi's letter dated December 7, 2018.

291.   In the exercise of reasonable care, Alltran ought to have ensured that Alltran informed TMCC of any account for which Alltran received notice that an attorney represented the consumer.

292.   Fagenson & Puglisi's said letter to Alltran notified Alltran of Fagenson & Puglisi's legal representation of plaintiff.

42

293.   The fact that TSI contacted plaintiff directly regarding the same debt for which Alltran had previously been notified that plaintiff had legal representation indicates a failure on the part of Alltran to comply with or to perform its duty to effect collection of the debt with reasonable care.

294.   Had Alltran duly informed TMCC of plaintiff's representation by counsel then TMCC should have so informed TSI and TSI should not have sent its collection letter directly to plaintiff at his home.

295.   On information and belief, at all times material to this complaint, TMCC referred dozens of consumer accounts of New York residents to Alltran for collection each month.

296.   On information and belief, at all times material to this complaint, TMCC placed with Alltran dozens of consumer automobile loans of New York residents each month for the purpose of collection.

297.   Alltran's act of failing to inform TMCC that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice and caused TSI to unlawfully communicate directly with plaintiff.

298.   Said deceptive act and practice was committed by Alltran in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

299.    Alltran's deceptive act and practice was consumer–oriented, in that Alltran's act of causing TSI to communicate directly with a legally–represented consumer, despite Alltran's knowledge that he was represented by counsel, was not an act limited to plaintiff's account, but extended to the accounts of other consumers which TMCC placed with Alltran for collection and on which Alltran had been notified there was legal representation.

300.    At all times relevant herein, Alltran maintained no agreement or procedure with TMCC to ensure that Alltran duly informed TMCC of all TMCC accounts for which Alltran was notified that an attorney represented the consumers.

301.    Alltran's said conduct of failing to inform TMCC that consumers are represented by counsel has a broader impact on consumers at large whose accounts are referred by TMCC to Alltran for collection and who Alltran is informed are represented by legal counsel in the matter of the collection of their TMCC debts.

302.    Alltran owes a duty to plaintiff and consumers at large to honor their right to legal representation and Alltran's failure to honor plaintiff's said right, because of its failure to inform TMCC of plaintiff's legal representation, resulted in TMCC placing the debt with TSI for collection without informing TSI that plaintiff was represented by counsel, thereby causing TSI to send its collection letter directly to plaintiff at his home, and thereby improperly encouraging plaintiff to contact TMCC's agent, TSI, directly about a debt for which Alltran knew he had the representation of legal counsel.

303.    Therefore, Alltran's failure to honor plaintiff's legal representation through its failure to inform TMCC of said legal representation and to have an agreement and procedure to prevent such failures were deceptive in a material way.

304.    Plaintiff is a reasonable consumer within the meaning of NYGBL and acted reasonably under the circumstances of this case.

305.    Upon receipt of TSI's collection letter, plaintiff became even more perplexed, confused, shocked and upset and was forced to seek further legal advice and representation.

306.    Plaintiff did not and could not understand why TMCC and its agent debt collector TSI would continue to communicate with him directly because Alltran ought to have informed TMCC that he was represented by legal counsel.

307.    Alltran violated NYGBL § 349(a) by improperly failing to inform TMCC that plaintiff was represented by legal counsel in the matter of the alleged debt, and Alltran is liable to plaintiff under NYGBL § 349(h).

308.    As a result of the above violations, Alltran violated NYGBL § 349 and plaintiff is entitled to injunctive relief against Alltran and Alltran is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

## AS AND FOR AN TENTH CAUSE OF ACTION

### Negligence

309.    Plaintiff re-alleges paragraphs 1-308 as if fully re-stated herein.

310.    Under NYGBL § 349(a), Alltran owed a recognized duty to plaintiff to effect collect of his alleged debt with reasonable care.

311.    Under NYGBL § 349(a), Alltran had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

312.    In addition, Alltran had a duty at common law to collect plaintiff's alleged debt with reasonable care.

313.    As and for an alternative cause of action, Alltran breached each duty to plaintiff.

314.    Alltran breached each duty to plaintiff by disregarding his right to be represented by counsel, failing to inform TMCC that plaintiff was represented by Fagenson & Puglisi and thereby causing TSI to send its collection letter directly to plaintiff at his home in defendants' campaign to collect the non-existent debt from plaintiff.

315.    Alltran caused TSI to communicate with plaintiff directly in breach of its duty to effect collection of the debt with reasonable care.

316.    Further, Alltran breached each duty to plaintiff by sending its collection letter concerning the Account at all, since plaintiff owed no debt to TMCC for the Account and Alltran would have so discovered with the exercise of due diligence before sending its collection letter.

317.    As a direct consequence of Alltran's said breach of duty to plaintiff, plaintiff suffered foreseeable damage.

318.    As a direct consequence of Alltran's said breach of duty to plaintiff, plaintiff suffered damage in that plaintiff became even more perplexed, confused, shocked and upset, and felt a sense that defendants were harassing him in their collection campaign to communicate with him directly despite defendants' knowledge that he did not owe the debt, and in any event was represented by legal counsel in the matter of the collection of the alleged debt, and TSI's communication with him directly caused plaintiff to fear that Fagenson & Puglisi no longer represented him in the matter of the collection of the non-existent debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against Alltran as follows:

(a)    awarding damages to plaintiff for Alltran's negligence;

(b)    enjoining Alltran from committing further deceptive and misleading acts and practices against plaintiff, pursuant to NYGBL § 349;

(c)    awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(d)     in the alternative to (c), awarding statutory damages pursuant to

NYGBL § 349 in an amount to be determined at time of trial;

(e)     awarding reasonable attorneys' fees, costs and disbursements

pursuant to NYGBL § 349(h); and

(f)     for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

Dated: New York, New York
        April 26, 2021.

*/s/  Novlette R. Kidd*
NOVLETTE  R. KIDD, ESQ. (NK 9339)
FAGENSON & PUGLISI, PLLC
Attorneys for Plaintiff
450 Seventh Avenue, Suite 704
New York, New York 10123
Telephone: (212) 268-2128
Nkidd@fagensonpuglisi.com